## GREEN BRUCE v. STATE.

No. A-7237.   Opinion Filed April 19, 1930.
(287 Pac. 770.)

B. B. Wheeler and Calvin Stewart, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter called the defendant, was by information jointly charged with C. W. Wise, with the crime of uttering and publishing a forged instrument, with the unlawful, fraudulent, and felonious intent then and there to cheat and defraud Herbert House.  The defendant was convicted and sentenced to serve a term in the state penitentiary for two years, from which sentence the defendant has appealed to this court.

H. G. House, in substance, testified he was running the Nash Clothing Store in Muskogee, on the 7th day of January, 1928; that C. W. Wise came into his store and wanted to purchase some clothing and presented a check purporting to be signed by P. E. Heckman; that he called Mr. Heckman over the phone and learned that the check was a forgery.  The county attorney then asked Mr. House the following questions and he gave the following answers:

"Q.  I hand you an instrument.  Did you ever see that before?  A.  Yes, sir.

"Q.  When was the first time you ever saw it?  A. When he presented it to me that evening.

"Q.  Wise presented it to you?  A.  Yes, sir.

"Q.  Did you determine whether or not the check was good?  A.  I telephoned Mr. Heckman; he said the check was a forgery and for me to hold the fellow until he called the officer."

Walter Pitts testified, in substance, that on the night of January 7, 1928, he was called to the clothing store and arrested C. W. Wise; as he went to the store he saw two colored men outside a short distance away; they were not together and he did not know who they were; he could not say one of them was the defendant; he had seen the defendant around there four or five years.

T. J. Elliott testified on behalf of the state, in substance, that on the night of January 7, 1928, some boy whose name he did not know came to his place of business. C. W. Wise was then brought into the courtroom, and the witness identified him as being the boy that came to his place of business and wanted to buy some clothing and shoes; he presented a check for $200 purported to be signed by P. E. Heckman, drawn on some oil company by P. E. Heckman, secretary-treasurer. Witness was then asked the following questions:

"Q. Is that the same form of the check that was presented to you? A. Yes, sir; but that is not the check.

"The check that was presented to me was drawn for $200.00; I called Mr. Heckman and he said he had not given the check. I think the clerk still had the check in his hand at the time I called Mr. Heckman. The clerk handed the boy the check and he said Mr. Heckman did give me the check, and he said 'he is right here, and I will go get him;' he went out but he did not come back; I do not know if he met anyone on the outside."

On cross-examination witness stated he had not seen Green Bruce, the defendant, that night; that he did not know Green Bruce in connection with the boy presenting the check to him.

Frankie Lewis, called as a witness, testified that on the 6th of January, 1928, he saw Green Bruce in front of Mense's grocery store; there was another colored boy with him. On cross-examination Frankie Lewis stated:

"I can't place the date but it was on Friday night, I started to a show and met him; I don't remember what month it was. Green Bruce was standing in front of the store with two checks in his hands; I asked him if he was looking for my cousin and he said he was; my cousin is C. W. Wise; this was about seven-thirty or a quarter of eight in the evening; when I left home I left C. W. Wise

there; I did not see Green Bruce and C. W. Wise together at all the night of January 6th, 1928; when I saw Green Bruce in front of the store I have mentioned it was dark; I was standing up close to him; the papers he had in his hands looked like checks to me."

On redirect examination witness stated that the papers he saw in Green Bruce's hands "I believe were pink; I am kind-a color-blind." On cross-examination he stated:

"Sometimes I can tell one color from another. I believe they were pink but I am not sure."

P. E. Heckman testified that he had lived in Muskogee since 1902; he had known the defendant ten or fifteen years; "the defendant has had occasion to be in my office;" that "on January 6th, 1928, I had in my office Princess Helen Oil Company blank checks; I found out on the morning of the 7th of January, 1928, that some of these checks had been taken out." He was then asked and answered the following questions:

"Q. I hand you a check, an instrument, and ask you to state to the court and the jury, whether you know what it is? A. Commercial National Bank, a Princess Helen Oil Company check for $40. It purports to bear my signature but it is not my signature. I did not write or authorize anyone to write it.

"Mr. Oldman: Now, Mr. Heckman, I will ask you, I offer this in evidence as State Exhibit One.

"The Court: Admitted.

"I was out home on the night of the 7th, and some one from the Elliott Clothing Store called me with reference to the check; in about fifteen minutes I was called by the Nash Clothing Store." On cross-examination witness stated he had done business with the defendant and had known him for about ten years, but that he had not seen the defendant either on the 6th or 7th of January, 1928.

"The Princess Helen Oil Company had been out of business nine or ten years; these were old checks that were left after the company went out of business; they were in an old desk, yes, sir."

Angelo Mense testified he was the owner of a grocery store in Muskogee; on the night of the 6th of January, 1928, he saw Green Bruce, the defendant, in his store; "there was a colored boy with him; the boy that worked for me called me and asked me about the check and I came into the store and he handed me the check and wanted to know if I would cash it; I asked Green where it came from and he said the boy had been working for this company, I believe it was an oil company, and they wanted to buy some groceries; it was supposed to be written by P. E. Heckman; the amount was for $25.; it was a Princess Helen Oil Company check."

"Q. Was it the same kind of a blank (exhibits check)? A. Yes, that is the one. That is the very one looks like, this is for $40. instead of $25.; if this is not the check that was presented to me it looks like it."

The defendant stated that "if I cashed the check he would buy as much as ten dollars of groceries." On cross-examination the witness stated this took place about the first week in January; it was between 5:30 and 6 o'clock in the evening.

"Q. You state at least this check was for $25, that is your memory of it? A. I suppose it was that, I think it was that.

"Q. Your best memory is that the check presented on the 6th day of January was for $25? A. Yes, sir; I think it was $25.

"By the Court: That is the one he is showing the jury, the check for $40.

"A. Yes, sir."

C. W. Wise was then called as a witness on behalf of the state and testified as to where he was living, and stated on the 7th day of January he was at home; "a fellow by the name of Green Bruce came to my house; I did not hardly know him; I had been with him; a friend of mine with me knew him well; I had been in Muskogee something like a week; I was with the defendant Green Bruce on the night of the 7th of January; he came to my house and said he had a job for me; we started and he kept eying my clothes and said, 'I think you are most too dirty for the job I have for you to do;' I returned home and changed my clothes; as we were going down town he pulled out the check, and as we were going along he said, 'I have two checks, I want you to get some clothes;' he first asked me if I wanted some clothes; he said to get some and bring him the rest of the money; Green Bruce said he had a lady fix the check; before going to the Elliott store he said, 'You take this check and go in there and get you a suit of clothes, just tell them you sold some land or made a deal;' he said 'if we get into trouble we have some pretty smart lawyers here in town to get us out of trouble'; I went in and told them I had the check I wanted cashed, and he looked at the check and said he knew Mr. Heckman, and he called Mr. Heckman and got an answer that he did not know anything about the check; a fellow in the store asked me where I got the check and I told him a man out there gave it to me, I did not know his name, and I started out to find him; I knew the defendant at the time; I went out and the defendant was about forty steps north toward Kress' store; I told him they turned the check down, it was no good, and he said, 'I have another one;' I told him I did not want to have anything to do with it; he said, 'Yes, come on and I will show you what to do;' he told me if they asked anything about the check to tell them I had some dealings with some oil company."

"Q. I hand you this check and ask you when was the first time you saw it? A. The first time I ever saw that check was the same Saturday night."

On cross-examination witness stated:

"I was never brought to court on this charge. No, sir, I have never been tried upon a charge of passing this, never been arrested or even in jail; I was arrested because of this check deal, that case has been disposed of, I plead guilty. I never knew anything about the checks, never saw any before then; I thought the check was all right; the check I took to the Elliott Clothing Store was not as small as that, I don't remember how much; I had seen the defendant three or four times before that night; I had gone around town with him; they told me if I would plead guilty and be sentenced to five years in the penitentiary they would recommend to the court that I be paroled, that is the reason I plead guilty. I was paroled by the court.

"The Court: Paroled by the court during good behavior."

The defendant testified in his own behalf as follows:

"I live at 704 Freemont; have lived in Muskogee twenty years; I got acquainted with C. W. Wise just before Christmas; two boys from Eufaula told me a couple of weeks before Christmas that if I would get them a job they would come;" that "there was a boy from Eufaula had some land he wanted to sell; I got them a job; about two weeks later Wise came up here and represented he had 160 acres in Creek county, and I went with him to several offices to try to find a buyer; I went to the Department and the Clerk checked up the land, and when the lady checked it thoroughly, she told me I had better leave that boy alone, he didn't have any land; and he said 'I have some land and I can go home and get the deed;' on the night of January 6th, 1928, I was at Mr. Watson's home; he lived at 9th and Market; I went there about five o'clock in the afternoon; Mr. D. called me from Tulsa and said Ada L—— had some land out in Muskogee, and I got in touch with Mr. Watson that day; while I was

there George Bryer came over; he is a white man; I stayed there until about eight-thirty and then went to 704 Freemont where I live; my family consists of my wife, and two children; on Saturday evening I went to see Hattie Smith at 11th and Floyd Sandford went with me; I came home and ate lunch and went to the shoe shop to get a pair of shoes my wife had at the shop; I then went to Moore's public market at Second street and stayed there until about eight-thirty or a quarter till nine; I never saw C. W. Wise from the 4th day of January, 1928, until the day of the preliminary hearing; I was not with Wise that night at any time; was not with him at the Elliott Store or the Nash Store; the first time I ever heard of these checks was the day of the preliminary hearing; I was not up to the store on Altamont Street on January 6, 1928; I have known Mr. P. E. Heckman about fifteen years; I had not been in his office for about a month; I never did get any blank checks out of his office."

On cross-examination the county attorney went into the question as to how long it had been since the defendant had a permanent job; the defendant answered he had been making a living trading around in land deals. "C. W. Wise told me he was 21 years old; I went with him several times to try to sell a tract of 160 acres of land he claimed to own; I did not tell him to claim to own the land to land agents; I guess the description on the check is a land description; I don't know anything about who put the description on there; I know P. E. Heckman; I have been to his office; I tried to sell my land to Mr. Kenny; trading in land is all I have been doing recently; this boy told me he had the land and I did not know any better; I was arrested on the following morning after this boy tried to pass the check; my wife has land that now has three oil wells on it."

"The Court: Bruce, you can go to a map and locate land? A. No, sir, I ain't got that far, I read and write. In these land deals I always let the buyer find out about

that. I went with Wise to the Indian Agency and they told me he did not have any land."

"I was not out on Altamont Street on Friday night, no, sir, I was out talking to Walter Watson on 9th and Market, Wise said he was only a half blood and he could not sell it all; when I was trying to help him sell the land I would get a commission; I never found he had any land; I did not see the other two parties that night; I had seen these two friends of Wise about a week before the 7th day of January, 1928."

Thomas Kenny, called by the defendant, testified, in substance, as to living in Muskogee; his occupation was locomotive engineer of the Midland Valley; that he knew Green Bruce; on January 7th, he saw the defendant at 219 South Second street; "I fix the time as I had just come in off my run; I stayed there with the defendant about an hour, then went to 231 South Second street to Moore's Grocery, public market, it was run by a white man; Green Bruce left me about nine o'clock that night, he said he had to go to the shoe shop and ask what time it was, and I looked at my watch and it was about nine; I did not see any more of him until he got out of jail."

On cross-examination witness stated he was on a deal with Green Bruce; he had made deals with him; "some time after Green Bruce got out of jail he came and talked with me about the case, and about me seeing him on the night of the alleged offense."

"Juror: How far is that cafe, how far is that cafe located? A. 219 South Second Street.

"Q. How far is that from Elliotts store? A. I judge that it is about two blocks.

"Q. His store is on South Second? Yes, sir."

Witness Kenny further stated "he was not trying to sell me any land; it was a royalty deal on a piece of land."

S. L. Berry testified on behalf of the defendant and stated he lived at 304 South Second street; that he was running the Tennessee Shoe Shop; the defendant Green Bruce came into his shop to get a pair of shoes that was left there for repair; "he came in about six-thirty or seven the first time, the last time about eight-thirty or nine o'clock." On cross-examination he was asked:

"Q. When did the defendant first come to you and talk to you about the affair, and tell about being in the shop. A. He did not tell me what night he was in there because I knew what night it was; I knew it was Saturday night."

Walter Watson testified he lived at 404 North Ninth street; that Green Bruce came to his house the night of January 6th, about 5 o'clock or a little before; "he was trying to see the parties to sell the royalty of Betty London, southeast of Beggs. George Fryer was there or come there."

"The Court: Uncle George Fryer? A. That's the gentleman, Judge."

"Bruce stayed there until about eight-thirty, or about nine." J. E. Moore testified he ran a grocery at 207 South Second street; that he knew the defendant; the defendant traded with him; he saw Mr. Kenny and Green Bruce in his store not long ago; "it was on Saturday night, after dark, I don't know what time; the defendant bought some groceries and left them on the counter and went out some place; he and Mr. Kenny stayed there and talked for some time; I could not say what time it was."

J. B. Wright testified that the boy came to his office with Green Bruce and wanted to sell a piece of land he claimed to own; "the defendant Green Bruce has been there several times."

The foregoing is, in substance, the testimony introduced in the case.

Defendant has assigned eleven errors alleged to have been committed by the trial court. We will consider the 6, 7, 8, 9, and 11 together, as they each relate to the sufficiency of the evidence to sustain the verdict. The information charges the defendant Green Bruce and C. W. Wise with "the crime of forgery in manner and form as follows, to wit: That the said C. W. Wise and Green Bruce did then and there knowingly, willfully, wrongfully and fraudulently and feloniously utter and publish as true to one Herbert House a certain forged fictitious and counterfeited check in words and figures as follows, to wit:

"Commercial National Bank in Muskogee, Oklahoma.
    "Muskogee, Oklahoma, Jan. 7, 1928.
"Pay to the order of Willie Wilson $40.00 Forty and no/100 Dollars
    "[Signed]    Princess Helen Oil Company of Muskogee
        "By P. E. Heckman."

The defendant contends that the state failed to prove the material allegations in the information, and that there is a total failure of proof that the defendant was ever in possession of or had any knowledge that a check of the description set out in the information was written. An amendment to the record has been filed which is agreed to by the county attorney and the attorney for the defendant, that when reference was made in the record to Exhibit "One" it should have been Exhibit "A" that was introduced in the trial of the case, as there was no Exhibit "One" introduced or considered in the trial. Exhibit "A" is as follows:

"Princess Helen Oil Company.    No. ..............
    "Muskogee, Okla., Jan. 7, 1928.
"Pay to the order of Willie Wilson $40.00 Exactly Forty dollars and no cents.    exactly.    Forty Dollars and

No/100 Dollars. To the Commercial National Bank, Muskogee, Oklahoma 49—2 Princess Helen Oil Co. By: P. E. Heckman, Secretary-Treasurer. SW NW 34—15—10. 40 sale."

A comparison of the check described in the information and the check described as state's Exhibit "A" clearly shows they are not one and the same, the language in them are not the same and the signatures are not the same, and from the language of the checks set forth in the information and state's Exhibit "A" they do not appear to be drawn on the same bank.

After a careful consideration of the entire record we hold that the evidence of the state is wholly insufficient to sustain the allegations in the information on account of the variance in the proof and allegations in the information. Other errors are assigned, but in the view we take of this record it is not necessary to consider them.

The case is reversed and remanded.

EDWARDS, P. J., and CHAPPELL, J., concur.